UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEE A. R., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security <br><br>　　　　Defendant. | No. CV 18-3315-AGR <br><br>MEMORANDUM OPINION AND ORDER |

　　　Plaintiff[1] filed this action on April 20, 2018. On January 8, 2019, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.[2] Having reviewed the entire file, the court reverses in part the decision of the Commissioner for the period June 2, 2009 through August 12, 2010 and remands for reconsideration of Plaintiff's disability for a

---

　　[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

　　[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 14, 15.)

closed period of benefits during that same time frame. In all other respects, the decision of the Commissioner is affirmed.

## I.

## **PROCEDURAL BACKGROUND**

On July 22, 2009, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits. In both applications, Plaintiff alleged an onset date of August 31, 2006. Administrative Record ("AR") 107. The applications were denied initially and upon reconsideration. AR 96-99. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On September 15, 2011, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 46-66. On October 26, 2011, the ALJ issued a decision denying benefits. AR 104-21. On October 31, 2012, the Appeals Council granted the request for review, vacated the hearing decision and remanded the case to the ALJ to reconsider nontreating source opinion and explain the weight given to such evidence; further evaluate the Plaintiff's mental impairments in accordance with the special technique; further consider Plaintiff's residual functional capacity; and, if warranted, obtain supplemental evidence from a VE. AR 122-26.

On remand from the Appeals Council, the ALJ conducted a hearing on April 8, 2013 at which Plaintiff testified. AR 67-83. On May 15, 2013, the ALJ issued a decision denying benefits. AR 10-28. On November 19, 2014, the Appeals Council denied the request for review. AR 1-6. On October 29, 2015, this court issued an Order of Remand pursuant to the stipulation of the parties, which provided that on remand the ALJ would reevaluate the medical evidence, including all medical source opinion evidence concerning physical and mental impairments, and explain the weight given to the opinion evidence, including the opinion of Dr. Franco. AR 715-26.

On remand, the ALJ conducted a hearing on May 18, 2017 at which the Plaintiff and a VE testified. AR 642-72. On August 22, 2017, the ALJ issued a decision denying

benefits. AR 613-29. On March 8, 2018, the Appeals Council denied the request for review. AR 604-08. This action followed.

## II.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## **DISCUSSION**

### A. **Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through March 31, 2013. AR 619. The relevant period is June 4, 2009 through the date of the ALJ's decision.[3] AR 617.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[4] the ALJ found that Plaintiff has the severe impairments of remote history of two brain aneurysms status/post two clipping procedures; migraine headaches; cognitive disorder; depressive disorder not otherwise specified; and possible seizure activity. AR 619. Plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels except that she is limited to occasionally carrying out complex instructions; making judgments on complex work related decisions; and understanding and remembering complex instructions. The ALJ noted, however, that the outcome of the case would not change even if Plaintiff were limited to light or medium work. AR 620. Plaintiff is unable to perform any past relevant work. AR 627. There are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as fast food worker, grocery bagger and mail clerk/sorter. AR 628-29.

## C. Examining Physician

Plaintiff contends that the ALJ erred in discounting the opinion of the examining psychologist, Dr. Wendel, dated October 8, 2009.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.

---

[3] The decision denying a previous application was res judicata for the period through June 3, 2009. AR 84-95, 100-03.

[4] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

2007). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation and emphasis omitted). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Wendel conducted a mental examination of Plaintiff on October 8, 2009. AR 376-79. Plaintiff was friendly and cooperative but strained. She had a full affect with underlying dysphoria. AR 377. Her memory and concentration were adequate. She was able to remember three items immediately and after a few minutes. After more time passed, she was able to recall two out of the three items. There were no apparent aberrations in her thought content, processes and perception. Her insight and judgment were fair. Dr. Wendel diagnosed depression NOS, rule out cognitive disorder NOS. Her Global Assessment of Functioning ("GAF") score was 59.[5] Plaintiff had mild restriction in activities of daily living unless she had migraines, and mild difficulties in maintaining social functioning. Dr. Wendel stated that, according to Plaintiff's "own seemingly credible report," she had marked difficulties in concentration, persistence and pace, particularly during headaches. AR 378. Plaintiff would have repeated episodes

---

[5] A GAF of 51-60 indicates moderate symptoms "(e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR").

of emotional deterioration in work-like situations related to migraines, which Plaintiff reported occurred three to four times per month and last for two to three days at a time, and due to depression. AR 376, 379.

The ALJ gave less weight to Dr. Wendel's opinion than other medical opinions for three interrelated reasons: (1) Plaintiff had been seeking benefits for some time and appeared to have misled her treating physician about the frequency of migraines after starting Topamax; (2) Plaintiff's activities of daily living and reports to her treating physicians did not support an allegation of migraines lasting two to three days throughout the relevant period; and (3) the opinions of Dr. Franco, Dr. Martin, Dr. Levin and Dr. Loomis were entitled to greater weight.[6] AR 624-25.

The ALJ found it reasonable to assume that Plaintiff "would have significant (marked) difficulty in maintaining concentration, persistence or pace" during migraines. AR 624. The question is whether the ALJ's reasons for discounting Dr. Wendel's opinions about the intensity and duration of Plaintiff's migraines after taking Topamax is supported by substantial evidence.

On June 2, 2009, at a neurology consultation four months before Dr. Wendel's opinions, Plaintiff reported having an average headache frequency of 1-2 per month. Her headache was left-side headache with 9/10 pain, nausea and vomiting. Her headache lasted for several hours that day, during which she lay down in a dark room. AR 358. She was prescribed Topamax. AR 361. At the follow-up visit on July 7, 2009, Plaintiff reported no change to her headaches, but her staring episodes had decreased to 1 per month. Headache frequency was 3 mild ones per week and 3 severe ones per

---

[6] Plaintiff argues that the ALJ did not discount Dr. Wendel's opinions based on other doctors' opinions. The ALJ, however, expressly stated that he gave Dr. Wendel's opinions "less weight than I give to the other opinions." AR 624. The ALJ noted that Dr. Franco's critique of Dr. Wendel's opinions "supports my giving less weight to the opinions expressed by Dr. Wendel than I give to other opinions." AR 625. The ALJ gave greater weight to Dr. Martin's opinion than to Dr. Franco. AR 626.

6

month with aura, nausea and vomiting. The severe headaches lasted 3-4 days.[7] Her neurological examination was unchanged. AR 356. The neurologist doubled the dosage of Topamax and told Plaintiff to reduce her use of Vicodin to avoid rebound headaches. AR 356-57. On August 12, 2009, Plaintiff reported to the neurologist that she had 3 headaches per month when she wakes up. She thought the Topamax was starting to help. AR 430. Her neurological examination was normal. AR 431. On August 27, 2009, however, she reported to a different physician that she had severe headaches 3 times per week with nausea and vomiting, and staring episodes 3 times per day, usually 1-2 minutes but up to 5 minutes. AR 436. On October 22, 2009, Plaintiff reported to the neurologist that Topamax decreased staring spells to 3-4 per month but had no effect on headaches. Her neurological and mental status examinations were normal. AR 434.

On January 14, 2010, Plaintiff reported she was "doing well." She had no recent staring spells, and reported 1-2 headaches per week. Her neurological examination was normal, and her memory and speech were normal. Plaintiff was told to maintain a headache log and add daily exercise. Her dosage of Topamax was increased to 100 mg. AR 432-33. On March 11, 2010, Plaintiff reported headaches 2-3 times per week, worse with stress. She reported being "under a great deal of financial stress" and "trying to look for a job." AR 469. Her neurologist increased the Topamax dose to 200 mg. AR 470. On July 12, 2010, Plaintiff reported to another physician that she was experiencing hand numbness for months, which started with Topomax, and she was going to see her neurologist next month. AR 533. On August 12, 2010, Plaintiff reported to her neurologist that she had numbness and tingling in her upper extremities when she took 200 mg of Topamax and therefore reduced the dosage to 100 mg.

---

[7] Plaintiff argues that the handwritten notes for the June 2, 2009 consultation contain a notation that she interprets to mean that the headaches last 2-4 days. (JS at 6.) That portion of the handwritten notes was not mentioned in the 4-page typewritten report of the June 2, 2009 consultation. *Compare* AR 358-61 (typewritten report) *with* AR 363 (handwritten note).

Topamax had helped with her headaches and that she was down to 1 headache per week. She was looking for a job and wanted to move out of her mother's home. Her neurological and mental status examinations were normal. AR 466. Her neurologist told Plaintiff to increase the Topamax dosage from 100 mg to 150 mg. AR 467.

On May 12, 2011, Plaintiff was "doing well and has been event free for the last 1 year on Topamax 150 mg a day." AR 463. Plaintiff reported an increase in headaches during the past four weeks, with an average of 1-2 headaches per week. She was taking care of her mother and looking for a job. *Id.* Her neurological examination was "entirely normal." AR 464. She did not show up to neurology appointments in September and December 2011, and her January 2012 examination was normal. AR 585 (1/26/12), 586-87. Subsequent medical records indicate her headache had improved with Topamax. AR 978. At times when Plaintiff complained of headache, the headache generally involved pain of 4/10 with medication. Plaintiff reported not having trouble concentrating on things such as reading the newspaper or watching television. AR 1004, 1034. Her cognitive function was intact. AR 976, 980, 984, 989, 993.

Dr. Franco reviewed the record in December 2009. AR 380-94. Dr. Franco pointed out that Dr. Wendel indicated marked difficulties for concentration, persistence and pace, yet Plaintiff had adequate concentration/memory at the evaluation and the medical records did not indicate marked impairment in these areas. AR 390.

Dr. Martin performed a complete psychological evaluation of Plaintiff on February 10, 2016. AR 937-45. Dr. Martin reviewed medical records as well as Dr. Wendel's report. AR 938. Plaintiff reported that she took care of her mother and tried to work as a motel manager simultaneously, but felt it was too much for her to do both jobs.[8] She is able to do activities of daily living, household chores, fix simple meals, run errands,

---

[8] Medical records in April 2015 indicate Plaintiff was fired after a bout of gastroenteritis put her on bed rest for a few days. AR 1034. Plaintiff testified that she was working 80 hours per month taking care of her mother. AR 650. She would give her mother a shower, get her dressed, take her to doctor's appointments, run errands, and manage her medications. AR 651.

go shopping, and get along well with family and friends. AR 939. Plaintiff's performance on IQ testing was within the borderline range, and her IQ subtest scores ranged from borderline to average. AR 942. Her memory testing was in the impaired range for verbal memory and borderline range for visual memory. AR 941. Her concentration and attention span was fair, her insight and judgment were intact, and her thought process was intact, linear and logical. AR 939.

Dr. Martin opined that Plaintiff was unimpaired in her ability to follow simple instructions; follow detailed instructions; maintain adequate pace to perform simple repetitive tasks; interact appropriately with coworkers, supervisors and the public on a regular basis; and adapt to changes, hazards or stressors in a workplace setting. AR 942-43. Plaintiff was mildly impaired in her ability to maintain adequate pace to perform complex tasks, maintain adequate concentration/attention, and withstand the stress of a routine workday. AR 942. In March 2016, Dr. Levin, who was board certified in neurology and psychiatry, reviewed medical records and opined that Plaintiff had mild impairments in activities of daily living, social functioning and maintaining concentration, persistence of pace. AR 963, 966, 969-70.

In June 2016, Plaintiff's cognitive function was intact, her judgment and insight were good and her mood/affect was full range. AR 976. Plaintiff reported that she planned her wedding for 60 guests in 3½ weeks in 2017. AR 656-57. She did Tai Chi therapy and massage, which helped her migraines. AR 661-62. Plaintiff helps her husband, who is president of the homeowners association and usually has "a pretty good honey do list" with tasks such as calling the HOA members; calling an insurance company; opening the gates for contractors at the building; walking around the complex and reporting violations to her husband. AR 652-53, 656-57. She usually gets up around 9:30 or 10:00 a.m. AR 653. She goes out with her girlfriends for breakfast or lunch. AR 653-54. Her migraines always come in the morning and may wake her up at

3:00 a.m. or 7:00 a.m. It starts with Plaintiff throwing up. AR 662. She did not testify that her migraines lasted days at a time.

Dr. Wendel's opinions concerning the intensity and duration of Plaintiff's migraines were based on Plaintiff's reports four months after starting Topamax. The medical records indicate that Plaintiff underwent a period of time during which her dosage of Topamax was adjusted according to her symptoms. Although the issue is a very close one, the medical records indicate that it took over one year to adjust the Topamax dosage to 150 mg, eliminate the side effects and reduce Plaintiff's symptoms to a manageable, functional level. The court therefore reverses in part the decision of the Commissioner for the period June 2, 2009 through August 12, 2010 and remands for reconsideration of Plaintiff's disability for a closed period of benefits during that same time frame.

In all other respects, the decision of the Commissioner is affirmed. After August 12, 2010, the ALJ could reasonably read the medical records to indicate that the debilitating symptoms and duration of migraines as recited by Dr. Wendel, based on Plaintiff's report, did not persist.

### D. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 627.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity

of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with the objective medical evidence. AR 627. Although the fact that the objective medical evidence does not support the severity of the subjective allegations cannot form the sole basis for discounting testimony, "it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As discussed above, this reason is supported by ample and substantial evidence during the period after August 12, 2010.

The ALJ also relied on inconsistencies in Plaintiff's reports to her neurologist and another physician in 2009. AR 623. This reason is supported by substantial evidence as discussed above. Finally, the ALJ also relied on Plaintiff's activities of daily living in the record, in her testimony and as reported in the medical source opinions. The ALJ may properly rely on activities of daily living that undermine the severity of the alleged symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). This reason is supported by substantial evidence, consisting of Plaintiff's testimony and her activities of daily living, as described by the ALJ, after August 12, 2010.

# IV.
# **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed in part for the period June 2, 2009 through August 12, 2010 and the matter is remanded for reconsideration of Plaintiff's disability for a closed period of benefits during that same time frame. In all other respects, the decision of the ALJ is affirmed.

DATED: March 26, 2019

ALICIA G. ROSENBERG
United States Magistrate Judge